UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------X

TONY BECKFORD

                                   Plaintiff,

         -against-

THE CITY OF NEW YORK, a municipal corporation; DETECTIVE BRIAN LITTLE, in his individual and official capacity, POLICE OFFICER LAURIE CAPUTO, in her individual and official capacity, DETECTIVE LATESHA CALLAHAN, in her individual and official capacity, SERGEANT ROBERT LI, in his individual and official capacity, POLICE OFFICER KRYSTAL CLASS, in her individual and official capacity, SERGEANT LARRY MEYERS, in his individual and official capacity

                                Defendants.
-------------------------------------------------------------------------X

**COMPLAINT**

Docket No.

JURY TRIAL DEMANDED

Plaintiff, Tony Beckford by his attorneys, Moore Zeman Womble, LLP, respectfully alleges for his complaint against the defendants as follows:

## PRELIMINARY STATEMENT

1.     Plaintiff brings this action for compensatory damages, punitive damages, and attorney's fees pursuant to 42 U.S.C. §§ 1983 and 1988 for violations of his civil rights guaranteed by the Constitutions of the Unites States and the State of New York.

## JURISDICTION

2.     This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the First, Fourth and Fourteenth Amendments to the United States Constitution.

3.     Jurisdiction is founded upon 28 U.S.C. §§ 1331, 1343, 1367.

## VENUE

4. Venue is properly laid in the Eastern District of New York under 28 U.S.C. § 1391(b), in that this is the District in which the claim arose.

## JURY DEMAND

5. Plaintiff respectfully demands a trial by jury of all issues in this matter pursuant to Fed. R. Civ. P. 38(b).

## PARTIES

6. Plaintiff TONY BECKFORD is an African-American male and was at all relevant times a citizen of the City and State of New York and the United States of America.

7. Defendant, the CITY OF NEW YORK, was and is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York.

8. Defendant, the CITY OF NEW YORK, maintains the New York City Police Department (hereinafter referred to as "NYPD"), a duly authorized public authority and/or police department, authorized to perform all functions of a police department as per the applicable sections of the New York State Criminal Procedure Law, acting under the direction and supervision of the aforementioned municipal corporation, the CITY OF NEW YORK.

9. At all times hereinafter mentioned, the individually named defendants, Detective Brian Little, Police Officer Laurie Caputo, Detective Latesha Callahan, Sergeant Robert Li, Police Officer Krystal Class, and Sergeant Larry Meyers, were duly sworn police officers of said department and were acting under the supervision of said department and according to their official duties.

10. At all times hereinafter mentioned, the defendants, either personally or through

their employees, were acting under color of state law and/or in compliance with the official rules, regulations, laws, statutes, customs, usages and/or practices of the State or City of New York.

11. Each and all of the acts of the defendants alleged herein were done by said defendants while acting within the scope of their employment by defendant City of New York.

12. Each and all of the acts of the defendants alleged herein were done by said defendants while acting in furtherance of their employment by defendant City of New York.

## FACTS

**April, 2015**

13. On April 9, 2015, at approximately 6:00 a.m., TONY BECKFORD was sleeping peacefully in his home at 378 Utica Avenue, Apt. 2RR Brooklyn, NY 11213.

14. Without knocking or requesting permission to enter Mr. Beckford's private home, defendants police officers JOHN DOES 1-4 entered Mr. Beckford's home without being granted consent.

15. At the above referenced time and place Mr. Beckford was naked and asleep. When Mr. Beckford's wife, Kenya Lincoln, attempted to record the actions of the police with her phone, police officer John Doe slapped the phone out of her hand, causing it to hit the ground and break.

16. Mr. Beckford was taken into custody, arrested and brought to the 9th Precinct. He was arraigned in criminal court and held for approximately five (5) days in the Manhattan Detention Complex.

17. After approximately five (5) days of incarceration, while still in custody, defendant Detective BRIAN LITTLE came into the Manhattan Detention Complex and signed Mr. Beckford out of his cell at approximately 11:00 AM. Defendant BRIAN LITTLE escorted Mr. Beckford from his cell to a nearby precinct where, despite Mr. Beckford being represented by legal counsel,

defendant BRIAN LITTLE attempted to place Mr. Beckford into a lineup. Mr. Beckford requested that his counsel be notified of his changed circumstances, but this request was ignored.

18. When Mr. Beckford refused to participate in the lineup, Defendant BRIAN LITTLE repeatedly kicked, punched and stomped on Mr. Beckford's shoulder, back and head, causing injury to his shoulder and head, further telling Mr. Beckford to "stop acting like a bitch."

19. As a result of the assault Mr. Beckford suffered at the hands of defendant BRIAN LITLLE he went to Belleview Hospital on April 14, 2015 where he was treated for "pain in joint involving shoulder region" and released at the request of the detectives who had brought him there.

**May 3, 2015**

20. On May 3, 2015, at approximately 4:30 p.m., TONY BECKFORD was sitting in a motor vehicle in the vicinity of New York Avenue and Eastern Parkway.

21. At the aforesaid time and place, the defendants, members of the New York City Police Department's 71st Precinct, unlawfully and without reasonable suspicion approached Mr. Beckford's vehicle.

22. Defendant SERGEANT LARRY MEYERS asked Mr. Beckford to step out of his vehicle before asking him for his driver's license or registration. Mr. Beckford asked the Sergeant why he was being arrested.

23. In direct response to plaintiff's lawful remarks, Sergeant Larry Meyers unjustifiably opened the door and grabbed Mr. Beckford by his arm as he sat in the driver's seat, and attempted to forcefully pull Mr. Beckford out of his vehicle.

24. Mr. Beckford did not exit his vehicle willingly. As captured on a digital video recording.

25. Defendant Police Officer Krystal Class, Police Officer Laurie Caputo, and Sergeant Larry Meyers pulled Mr. Beckford in opposite directions by both of his arms while Officer John Doe repeatedly punched Mr. Beckford in the groin.

26. Police Officer John Doe then hit Mr. Beckford in the head with his night stick.

27. After a struggle of approximately five (5) minutes that was captured on a digital recording device, defendant Police Officer John Doe ultimately yanked Mr. Beckford out of the car and slammed his head into the road.

28. Mr. Beckford was then slammed into the ground, handcuffed behind his back, and forcefully thrown into an NYPD vehicle. The handcuffing was unjustified, and applied in an over-tightened manner that caused protracted pain and discomfort to Mr. Beckford.

29. Despite Mr. Beckford informing the arresting officers of his asthma condition and imploring them to stop, they continued to beat and assault him.

30. Despite Mr. Beckford's injuries and repeated requests that the handcuffs be loosened or removed, and notwithstanding the obvious signs that Mr. Beckford was in excruciating pain, neither defendant Sergeant Larry Meyers nor defendant police officers loosened the handcuffs, thereby subjecting Mr. Beckford to excruciating pain and discomfort for an extended period of time. The foregoing took place while Mr. Beckford sat in the cramped rear seat of defendants' police cruiser with defendants Police Officers sitting in the front seat as Mr. Beckford cried in pain and pleaded with them to remove or loosen the cuffs.

31. Mr. Beckford was arrested and prosecuted. Upon his release from police custody, Mr. Beckford immediately went to Downstate Hospital on May 6, 2015 where he was diagnosed with a head contusion and bleeding under the skin and was treated, prescribed medication, and released.

32. All of the above occurred while defendant Police Officers failed to intervene in the

illegal conduct of one another that was being committed in their presence, and that they each had a meaningful opportunity to stop.

33. All of the above occurred as a direct result of the unconstitutional policies, customs or practices of the City of New York.

34. As a result of the foregoing, plaintiff sustained, *inter alia*, physical injuries, emotional distress, embarrassment, and humiliation, and deprivation of his constitutional rights.

35. All of the above occurred while other defendant NYPD officers failed to intervene in the illegal conduct described herein.

36. All of the above occurred as a direct result of the unconstitutional policies, customs or practices of the City of New York, including, without limitation, the inadequate screening, hiring, retaining, training supervising, and disciplining of its employees; and due to discrimination against plaintiffs due to their race and/or nationality.

37. The aforesaid event is not an isolated incident.  Defendant CITY OF NEW YORK is aware (from lawsuits, notices of claims, and complaints filed with the NYPD's Internal Affairs Bureau, and the CITY OF NEW YORK'S Civilian Complaint Review Board) that many NYPD officers, including defendants, are insufficiently trained regarding the placing of persons of interest in lineups; the investigation of crimes; and, the treatment of incarcerated individuals.

38. Defendant CITY OF NEW YORK is further aware that such improper training has often resulted in a deprivation of civil rights.  Despite such notice, defendant CITY OF NEW YORK has failed to take corrective action.  This failure caused the officers in the present case to violate the plaintiffs' civil rights.

39. Moreover, upon information and belief, defendant CITY OF NEW YORK was aware, prior to the incident, that the individual defendants lacked the objectivity, temperament, maturity,

discretion, and disposition to be employed as police officers. Despite such notice, defendant CITY OF NEW YORK has retained these officers, and failed to adequately train and supervise them.

40. As a result of the foregoing, plaintiff TONY BECKFORD sustained, *inter alia*, physical injuries, emotional distress, embarrassment, humiliation, and deprivation of his constitutional rights.

## FEDERAL CLAIMS

### FIRST CAUSE OF ACTION
(Deprivation of Rights Under 42 U.S.C. §§ 1981 and 1983)

41. Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs numbered "1" through "40" with the same force and effect as if fully set forth herein.

42. All of the aforementioned acts of defendants, their agents, servants and employees were carried out under the color of state law.

43. All of the aforementioned acts deprived plaintiffs TONY BECKFORD, member of a racial minority, of the rights, privileges and immunities guaranteed to the citizens of the United States by the Fourth and Fourteenth Amendments to the Constitution of the United States of America, and in violation of 42 U.S.C. §§ 1981 and 1983.

44. The acts complained of were carried out by the aforementioned individual defendants in their capacities as police officers, with the entire actual and/or apparent authority attendant thereto, and with the intent to discriminate on the basis of race.

45. The acts complained of were carried out by the aforementioned individual defendants in their capacities as police officers, pursuant to the customs, usages, practices, procedures, and the rules of the CITY OF NEW YORK and the New York City Police Department, all under the supervision of ranking officers of said department.

46. Defendants, collectively and individually, while acting under color of state law, engaged in conduct that constituted a custom, usage, practice, procedure or rule of the respective municipality/authority, which is forbidden by the Constitution of the United States.

47. Defendants violated the Fourth and Fourteenth Amendment because they stopped and detained plaintiff without reasonable suspicion.

48. As a result, plaintiff TONY BECKFORD sustained the damages alleged herein.

## SECOND CAUSE OF ACTION
(Failure To Intervene Under U.S.C. § 1983)

49. Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs numbered "1" through "40" with the same force and effect as if fully set forth herein.

50. All of the aforementioned acts of defendants, their agents, servants and employees were carried out under the color of state law.

51. Defendants had an affirmative duty to intervene on behalf of plaintiff TONY BECKFORD whose constitutional rights were being violated in their presence by other officers.

52. The defendants failed to intervene to prevent the unlawful conduct described herein.

53. As a result of the foregoing, plaintiff TONY BECKFORD'S liberties were restricted for an extended period of time, he was put in fear of his safety, and he was humiliated and subjected to physical restraints.

## THIRD CAUSE OF ACTION
(Excessive Force Under U.S.C. § 1983)

54. Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs numbered "1" through "40" with the same force and effect as if fully set forth herein.

55. All of the aforementioned acts of defendants, their agents, servants and employees were carried out under the color of state law.

56. While in the course of their duties and while acting under color of law, defendants affected a seizure of plaintiff TONY BECKFORD by intentionally using excessive physical force against plaintiff, including but not limited to placing him in restraints, kicking, punching, causing injury, including but not limited to, pain to his shoulder, pain to his groin region, and pain to his head.  These separate incidences resulted in four trips to area hospitals.

57. The physical force of the individual officer defendants on plaintiff TONY BECKFORD was objectively unreasonable.

58. By virtue of the foregoing, defendants used excessive force on plaintiff TONY BECKFORD causing him injury requiring further medical attention for his injuries.

**FOURTH CAUSE OF ACTION**
(Supervisory Liability under 42 U.S.C. § 1983)

59. Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs numbered "1" through "40" with the same force and effect as if fully set forth herein.

60. The supervisory defendants personally caused plaintiff TONY BECKFORD constitutional injury by being deliberately or consciously indifferent to the rights of others in failing to properly supervise and train their subordinates.

**FIFTH CAUSE OF ACTION**
(Municipal Liability)

61. Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs numbered "1" through "40" with the same force and effect as if fully set forth herein.

62. Defendants, collectively and individually, while acting under color of state law, engaged in conduct that constituted a custom, usage, practice, procedure or rule of the respective municipal/authority, which is forbidden by the Constitution of the United States.

63. The aforementioned customs, policies, usages, practices, procedures and rules of the New York City Police Department included, but were not limited to, placing accused persons who are known to be represented by counsel into lineups without notifying counsel and pulling people out of their cars without probable cause.  In addition, the CITY OF NEW YORK engaged in a policy, custom or practice of inadequate screening, hiring, retaining, training, disciplining and supervising its employees that was the moving force behind the violation of plaintiff TONY BECKFORD'S rights as described herein.  As a result of the failure of the CITY OF NEW YORK to properly recruit, screen, train, discipline, and supervise its officers, including the individual defendants, defendant CITY OF NEW YORK has tacitly authorized, ratified, and has been deliberately indifferent to the acts and conduct complained of herein.

64. The City's continuing failure to deter police misconduct has led to an ever increasing number of lawsuits for repeated misconduct by the same officers, same units, and same precincts. In the fiscal year of 2012, there were 2,004 tort cases commenced against the New York City Police Department, up from 1,425 tort cases commenced for the fiscal year of 2008.[1]  In the past ten years, the City of New York has paid nearly a billion dollars from lawsuits brought against the NYPD.[2]

65. The 9th and 71st Precincts of the New York City Police Department have an extensive history of civil rights violations.  According to the City Comptroller's Office fiscal year report for 2009 (the last available year of publicly reported statistics), between 2005 and 2009, 376 incident that led to formal complaints originated in the 9th Precinct and 638 originated from the 71st

---

[1]  Fiscal 2013 Preliminary Mayor's Management Report for the New York City Police Department, available at www.nyc.gov/html/ops/downloads/pdf/mmr0912/nypd.pdf, see page 5, last visited on January 24, 2014.

[2]  "NYPD gives quite the payday; AP report reveals police have dolled out $1B to resolve lawsuits," by Associated Press Writers Colleen Long and Jennifer Peltz via Daily News wire Report, http://www.nydailynews.com/new-york/nypd-payday-ap-report-reveals-police-dolled-1b-resolve-lawsuits-article-1.189671, October 15, 2010 last visited on January 27, 2014.

Precinct.³  In addition to prior lawsuits, the City has been aware for some time, from lawsuits, notices of claim, complaints filed with the Civilian Complaint Review Board, and judicial rulings suppressing evidence and finding officers incredible as a matter of law, that a disturbing number of their police officers from the 9th and 71st precincts unlawfully search and seize citizens, bring charges against citizens with no legal basis, perjure themselves in charging instruments and testimony, and fail to intervene in and report the obviously illegal actions of their fellow officers.

66. The widely held assumption is that civil rights lawsuits deter police misconduct.  "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." Wyatt v. Cole, 504 U.S. 158, 161, (1992) citing Carey v. Piphus, 435 U.S. 247, 254-257, (1978). "As far as we know, civil liability is an effective deterrent [to civil rights violations], as we have assumed it is in other contexts." See Hudson v. Michigan 547 U.S. 586, 598 (2006) citing Correctional Services Corp. v. Malesko, 534 U.S. 61, 70 (2001) and Nix v. Williams, 467 U.S. 431, 446, (1984). "It is almost axiomatic that the threat of damages has a deterrent effect (citation omitted) surely particularly so when the individual official faces personal financial liability." Carlson v. Green, 446 U.S. 14, 21, (1980), citing Imbler v. Pachtman, 424 U.S. 409, 442, and footnote 6 (1976).

67. However, the City of New York has isolated NYPD officers like Detective Brian Little, Police Officer Laurie Caputo and Police Officers John and Jane Doe #1-8 of the 9th Precinct and 71st Precinct from accountability for civil rights lawsuits by indemnifying officers who violate the constitutional rights of citizens, and, as a result, is preventing civil rights lawsuits from having any deterrent value to the City, the NYPD or its officers.  Civil rights lawsuits against police officers

---

³ "CCRB: Attribution of Complaints to the Housing Bureau 2005 - 2009," https://data.cityofnewyork.us/Public-Safety/Where-Incidents-That-Led-To-A-Complaint-Took-Place/fics-ewaq

have no impact on the officers' careers, regardless of the expense to the City of the officers' lawsuit liability, even after multiple lawsuits. In 1999, former Comptroller Alan Hevesi reported that there was a "a total disconnect" between the settlements of even substantial civil claims and police department action against officers.[4] This "total disconnect" between officers' liability and NYPD discipline, results in a system where the City pays vast sums to settle false arrests, but the NYPD does nothing to investigate nor address the underlying causes of such false arrests or officers who have incurred large sums of civil rights liability.

68. The only named officers in this complaint are Detective Brain Little and Police Officer Laurie Caputo. Detective Brian Little was the Detective who took Mr. Beckford out of his cell in the Manhattan Detention Center, kicked him, punched him, and attempted to place him in a lineup without notifying his attorney. Police Officer Laurie Caputo was the alleged author of the criminal complaint written against the plaintiff in the matter the occurred on May 3rd. None of the other officers are able to be identified at this point because on April 14, 2015 and May 3, 2015, Mr. Beckford was being assaulted by as many as 8 officers and was in no position to collect identifying information. It is believed that all officers present for the April 14, 2015 and May 3, 2015 incidents were officers within the 9th and the 71st Precincts.

69. The City Council, Government Operations Committee, despite being alerted at a City Council hearing on December 12, 2009, and on other occasions, to the obvious problem of officers and precincts with a disproportionate responsibility for civil rights lawsuit liability, has failed to take action to hold officers or precincts accountable. It has likewise failed to hold an investigative hearing into what extent specific officers, units and precincts are disproportionately responsible

---

[4] Bob Hennelly's WNYC report, "Amid City Budget Crisis, New Scrutiny on Millions in NYPD Settlements" from June 8, 2011: http://www.wnyc.org/articles/its-free-country/2011/jun/08/amid-city-budget-grappling-new-scrutiny-millions-nypd-settlements/, last visited on January 27, 2014.

for New York City civil rights lawsuits.

70. Nevertheless, the City has repeatedly resisted attempts to catalog even basic information gleaned from civil rights lawsuits that could improve training, leadership, supervision, and discipline in the NYPD.  The City's deliberate indifference towards the contents of civil rights litigation, individual officers repeatedly named in lawsuits, incidents repeatedly occurring in the same division, and patterns of misconduct that arise in civil rights litigation has caused the constitutional violations of excessive force and false arrest suffered by plaintiff.

71. Further, the City has no procedure to notify individual officers or their supervisors of unfavorable judicial review of their conduct or to calculate the total liability of an individual officer or of a precinct.  Without this notification, improper practices and incredible testimony go uncorrected, problematic supervision or leadership at the precinct level goes ignored, and repeated misconduct by individual officers goes unaccounted for.  Even occasional judicial findings that officers have testified incredibly are not reported routinely to the police department or any oversight agencies.

72. All of the aforementioned has created a climate where police officers and detectives lie to prosecutors and in police paperwork and charging instruments, and testify falsely, with no fear of reprisal.  "Informal inquiry by the court and among the judges of this court, as well as knowledge of cases in other federal and state courts, has revealed anecdotal evidence of repeated, widespread falsification by arresting police officers of the New York City Police Department.  Despite numerous inquiries by commissions and strong reported efforts by the present administration-through selection of candidates for the police force stressing academic and other qualifications, serious training to avoid constitutional violations, and strong disciplinary action within the department-there is some evidence of an attitude among officers that is sufficiently widespread to

constitute a custom or policy by the city approving illegal conduct of the kind now charged." See Colon v. City of New York, et al, 2009 WL 4263362 (E.D.N.Y.) (Weinstein, J.).

73. In Floyd v. City of New York, 08-cv-01034-SAS-HBP, Judge Scheindlin found that the City acted with "deliberate indifference toward the NYPD's practice of making unconstitutional stops and conducting unconstitutional frisks" and adopted "a policy of indirect racial profiling by targeting racially defined groups for stops based on local crime suspect data." (Opinion and Order, dated August 12, 2013, P.13).

74. The City is aware that all of the aforementioned has resulted in violations of citizens' constitutional rights. Despite such notice, the City has failed to take corrective action. This failure and these policies caused the officers in the present case to violate plaintiffs' civil rights, without fear of reprisal.

75. Plaintiff has been damaged as a result of the deliberate indifference of the Defendant City.

**SIXTH CAUSE OF ACTION**
Respondeat Superior
(Against the City of New York)

76. Plaintiff repeats, reiterates, and realleges paragraphs "1" through "40" as if fully set forth herein.

77. The Individual Officer Defendants were employees of the City at the time of the incidents alleged herein and each was acting at all relevant times within the scope of his or her employment with the City.

78. The City is therefore vicariously liable for the tortious acts as described and alleged herein of the Individual Officer Defendants under the common law doctrine of respondeat superior.

79. As a result of the foregoing, plaintiff TONY BECKFORD is entitled to compensatory damages in an amount to be determined by a jury and is further entitled to punitive damages against the individual defendants in an amount to be determined by a jury.

WHEREFORE, plaintiff demands a jury trial and the following relief against the defendants:

    a.    Compensatory damages in an amount to be determined by a jury;

    b.    Punitive damages in an amount to be determined by a jury;

    c.    Costs, interest and attorney's fees, pursuant to 42 U.S.C. §1988; and

    d.    Such other and further relief as this Court may deem just and proper, including injunctive and declaratory relief.

Dated: New York, New York
       March 29, 2016                            By:    Benjamin Zeman

                                                                              Benjamin Zeman
                                                                              Attorney for Plaintiffs
                                                                              Moore Zeman Womble, LLP
                                                                              66 Willoughby St., 2nd Floor
                                                                              Brooklyn, New York 11201
                                                                              (T) (718) 514-9100
                                                                              (F) (917) 210-3700
                                                                              zeman@brooklynattorney.nyc